UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BENJAMIN C.[1],                                Case No. 2:22-cv-3422
    Plaintiff,                                     Litkovitz, M.J.

vs.

COMMISSIONER OF                    **ORDER**
SOCIAL SECURITY,
    Defendant.

Plaintiff Benjamin C. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 8), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply memorandum (Doc. 11).

**I. Procedural Background**

Plaintiff protectively filed his applications for DIB and SSI on June 15, 2020, alleging disability since August 1, 2019, due to back surgery in October 2019 with continued pain. (Tr. 464; *see also* Tr. 401-16). The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Jeffrey Hartranft. Plaintiff, and a vocational expert ("VE"), appeared by telephone and testified at the ALJ hearing on July 13, 2021. On July 21, 2021, the ALJ issued a decision denying plaintiff's DIB and SSI applications. (Tr. 196-216). This decision became the

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment, or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

final decision of the Commissioner when the Appeals Council denied review on June 21, 2022. (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. The [plaintiff] has not engaged in substantial gainful activity since August 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairment: degenerative disc disease of the lumbar spine, status post fusion (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except: the [plaintiff] can use a cane when walking but can carry up to the exertional limitations in the other hand; can occasionally use left foot controls; occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, and crawl; and should avoid workplace hazards such as unprotected heights and machinery.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[2]

---

[2] Plaintiff's past relevant work was a concreting supervisor/concrete finisher, a heavy, but very heavy as performed, skilled position; fork lifter, a medium, semi-skilled position; and material handler, a heavy, semi-skilled position. (Tr. 209, 289-90).

3

7. The [plaintiff] was born [in] . . . 1982 and was 37 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[3]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 1, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 201-10).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*,

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as assembler (35,000 jobs nationally), inspector (40,000 jobs nationally), and sorter (30,000 jobs nationally). (Tr. 210, 290-91).

___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Error**

In his sole assignment of error, plaintiff alleges the ALJ erred in evaluating the opinions of his primary care provider, Certified Nurse Practitioner Angela Paima ("Ms. Paima"). (Doc. 8). Plaintiff argues the ALJ's "narrow analysis . . . violated 20 C.F.R. § 404.1520c" because although "the ALJ did mention the supportability and consistency factors," the ALJ "failed to adequately evaluate those factors." (*Id*. at PAGEID 855). The Commissioner argues that the ALJ's decision is supported by substantial evidence, and the ALJ properly evaluated the opinions from Ms. Paima consistent with the regulations and based on the record evidence. (Doc. 10).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).[4] These new regulations eliminate the "treating physician rule" and deference to

---

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively." *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-

treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[5] *Id*. The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[6] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[7] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources

---

281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)). The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

[5] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[6] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[7] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2).  The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. § 404.1520c(b)(2) (emphasis added).  Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

On July 12, 2021, Ms. Paima completed a medical assessment form on behalf of plaintiff in which she included her opinions relating to plaintiff's impairments.  (Tr. 816).  Ms. Paima listed plaintiff's diagnoses as spondylolisthesis and lumbosacral spondylosis with radiculopathy. (Tr. 815).  Ms. Paima opined that plaintiff could sit/stand less than two hours in an eight-hour workday and sit for at least six hours in an eight-hour workday.  (*Id.*).  Ms. Paima further opined that although plaintiff would sometimes need to take unscheduled breaks during a working day, it was "unknown" how often this would happen and how long, on average, plaintiff would have to rest before returning to work.  (*Id.*).  Ms. Paima opined that plaintiff must use a cane or other hand-held assistive device when engaging in occasional standing/walking; he would be off-task 10 percent of a typical workday; and he would be absent about three days per month as a result of his impairments or treatment.  (Tr. 816).  In the left margin of the assessment, and with no accompanying explanation, Ms. Paima bracketed her opinions with the phrase "Physical Therapy."  (Tr. 815-16).  When asked to identify the clinical findings and objective signs that

7

support her opinion, Ms. Paima wrote, "Abnormal MRI referred to neurology/neuroscience." (Tr. 815).

The ALJ found Ms. Paima's opinion "unpersuasive." (Tr. 208). In evaluating the consistency and supportability of her opinion, the ALJ concluded:

> Ms. Paima's assessment is also bracketed with the phrase physical therapy but she does not narratively explain the significance of this notation. The undersigned [ALJ] has found this assessment unpersuasive. Ms. Paima does not offer any objective support in the form of references to imaging, electromyography study, or even physical examinations of record to support the extent of the limitations she identifies. The extent of her assessed limitations are directly contrary to the April 2021 neurology evaluation findings which noted both normal imaging of the lumbar spine and brain as well as generally unremarkable physical examination findings, and neurological follow up in May 2021, with again generally normal physical examination findings (Exhibit 11F, pages 7-9, 12F, pages 18-23).

(*Id.*).

### 1. Supportability

Plaintiff argues the ALJ failed to adequately address the supportability factor as required by 20 C.F.R. § 404.1520c(c)(1) when evaluating Ms. Paima's opinion. (Doc. 8). He alleges the ALJ incorrectly determined that Ms. Paima's opinion lacked objective support because Ms. Paima specifically stated "objective evidence (i.e. an abnormal MRI that referred to neurology and neuroscience) supported her opinions of the severity of [plaintiff's] symptomatology." (*Id.* at PAGEID 857, citing Tr. 815). Plaintiff points to Ms. Paima's March 2021 progress note reflecting the "abnormal" MRI and subsequent neurology referral. (*Id.* at PAGEID 858, citing Tr. 702-03).

On February 25, 2021, plaintiff underwent an MRI of the brain and lumbar spine. The brain MRI showed: (1) "Single punctate focus of T2 FLAIR hyperintensity left front lobe," and "[d]ifferential includes changes so shaded with vasculitis, migraine type headaches, demyelination or chronic small vessel ischemic change among other considerations"; and (2)

8

"Sinus disease." (Tr. 695). The lumbar spine MRI showed "[p]ostsurgical changes and degenerative disease as detailed." (Tr. 700).

Following the MRIs, plaintiff saw Ms. Paima on March 26, 2021. Ms. Paima reported, "Pt. did have a recent MRI of his brain that was abnormal and he was referred to neurology." (Tr. 702-03). Ms. Paima also reported, "Pt. also had an abnormal MRI of his lumbar spine and has had back surgeries in the past he is being referred to neurosurgery for further evaluation." (Tr. 703).

On a referral from Ms. Paima, plaintiff presented to neurology on April 5, 2021 with a chief complaint of falling and an "abnormal [brain] MRI." (Tr. 712). Neurologist Dr. Even Wang noted that plaintiff had recently fallen multiple times going down stairs and had an MRI of his brain and lumbar spine. (Tr. 713). Dr. Wang "reviewed both [MRI] scans personally" and concluded "they were normal." (*Id*.). On physical examination, Dr. Wang observed that plaintiff was not in acute distress; his neck was supple and he had no nuchal rigidity or peripheral edema; his motor examination and reflexes were unremarkable; sensory exam showed "decreased to touch and vibration in the left leg"; and he had intact coordination with no dysmetria. (Tr. 713-14). Dr. Wang's assessment and plan stated: "I reviewed his MRI of the brain and lumbar spine, both are normal. On exam he has some functional overlay especially on the left side. I will get a[n] EMG of the lower extremities." (Tr. 712). The subsequent EMG administered on April 23, 2021 was normal. (Tr. 721).

The ALJ was presented with two conflicting medical opinions: Ms. Paima opined that plaintiff's brain and lumbar spine MRIs were abnormal, while Dr. Wang personally reviewed these same MRIs and concluded they were normal. Though the most important factors the ALJ must consider in evaluating medical opinions are supportability and consistency, an ALJ may

9

also consider the specialization of the medical provider. 20 C.F.R. § 404.1520c(b)(2). Under 20 C.F.R. § 404.1520c(c)(4), "[t]he medical opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of specialty." 20 C.F.R. § 404.1520c(c)(4). It was therefore reasonable for the ALJ to credit and rely upon the opinion of Dr. Wang, who had a specialty in neurology, over that of nurse practitioner Ms. Paima. Moreover, it was within the ALJ's province to resolve conflicts in the medical evidence, and substantial evidence supports the ALJ's finding as to this determination. *See Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) (ALJ has duty to resolve conflicts in medical evidence). *See also Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990) ("The [Commissioner], and not the court, is charged with the duty to weigh the evidence, to resolve material conflicts in the testimony, and to determine the case accordingly."); *Blakley*, 581 F.3d at 406 (A decision supported by substantial evidence must stand, even if the Court might decide the question differently based on the same evidence).

Plaintiff also contends there "are several other appointments in the record that support the limitations noted in Ms. Paima's assessment and contradict the ALJ's decision." (Doc. 8 at PAGEID 855). Plaintiff points to Ms. Paima's treatment notes from November 2019, July 2020, August 2020, and March 2021, and alleges these support Ms. Paima's assessed restrictions. (*Id.* at PAGEID 858).

With the exception of plaintiff's November 14, 2019 visit with Ms. Paima, which occurred only two weeks after his laminectomy and spinal fusion[8], the ALJ considered and

---

[8] Plaintiff reported he was doing well; he continued to wear a back brace; and he had restrictions of lifting no more than 25 pounds, no bending, and no twisting. (Tr. 590). On musculoskeletal exam, he exhibited decreased range of motion, tenderness, pain and spasm. (Tr. 591).

discussed the records cited by plaintiff. Plaintiff's July 2020 examination with Ms. Paima showed abnormal gait with left leg strength at 4/5 but was otherwise unremarkable. (Tr. 206, citing Tr. 595). At his August 2020 exam, plaintiff complained of increased left leg and foot pain after tripping on his cat on the stairs and falling, but his physical examination was unremarkable with normal musculoskeletal range of motion, normal muscle tone, and normal coordination. (Tr. 206, citing Tr. 599-600). Ms. Paima's March 2021 treatment notes reflect plaintiff's complaints of multiple falls in the past three months. On exam, plaintiff exhibited decreased range of motion of the cervical and lumbar spine with spasms and tenderness, and abnormal gait. (Tr. 207, citing Tr. 702-04).

The ALJ considered Ms. Paima's treatment records from the relevant time period and reasonably determined that while they supported some restrictions on plaintiff's RFC, they did not support the extreme restrictions imposed by Ms. Paima given the lack of "objective support in the form of references to imaging, electromyography study, or even physical examinations of record. . . ." (Tr. 208; *see also* Tr. 206-07, discussing the July 2020, August 2020, and March 2021 treatment notes). While plaintiff contends Ms. Paima's treatment notes actually support her opinion, this argument in essence invites the Court to reweigh the evidence before the ALJ, which is not the province of the Court. *See Nasser v. Comm'r of Soc. Sec.*, No. 22-1293, 2022 WL 17348838, at *2 (6th Cir. Dec. 1, 2022) (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). *See also Whetsel v. Comm'r of Soc. Sec.*, No. 2:15-cv-3015, 2017 WL 443499, at *8 (S.D. Ohio Feb. 2, 2017) ("[T]he Court is charged with determining the sufficiency of the evidence, not its weight.") (quoting *Thomas v. Comm'r of Soc. Sec.*, 2014 WL 2114567, at *16 (N.D. Ohio May 20, 2014)), *report and recommendation adopted*, 2017 WL 1034583 (S.D. Ohio Mar. 16, 2017). The ALJ's finding on supportability is substantially supported by the record.

### 2. Consistency

Plaintiff also contends the ALJ failed to adequately address the consistency factor as required by 20 C.F.R. § 404.1520c(c)(2) when evaluating Ms. Paima's opinion.  Plaintiff asserts the ALJ "engaged in a very narrow view of the record" and "misrepresented the record" when he cited to "only two appointments from the record to indirectly reference the consistency factor." (Doc. 8 at PAGEID 855).  Plaintiff states "the record as a whole was consistent with Ms. Paima's assessment" including "the physical therapy notes[.]"  (*Id*. at PAGEID 859-60).  Plaintiff points to portions of the record showing he was in "persistent pain" despite completing "multiple rounds of epidural steroid injections, under[going] surgery, and [going] to physical therapy." (*Id*.).  Plaintiff also cites to notes from November 2019 to March 2021 and argues that he continues to experience weakness and numbness in his lower extremities.  (*Id*. at PAGEID 859-60, citing Tr. 574-76, 578, 581-82, 593, 596-97, 680, 702-03).  Plaintiff argues "the physical therapy notes were [] consistent with Ms. Paima's assessment" (*Id*. at PAGEID 860), alleging he "only met one of the five goals" over the course of his physical therapy and "continued to demonstrate weakness, decreased mobility, muscle dysfunction, and somatic dysfunction in his lumbar spine."  (*Id*. at PAGEID 861).

While plaintiff contends the ALJ engaged in only a "narrow view of the record," the ALJ's decision as a whole reflects a thorough examination of the medical evidence and supports his assessment of the persuasiveness of Ms. Paima's opinion.  The ALJ acknowledged plaintiff had a "history of low back and left lower extremity radicular pain, in the context of a history of heavy work as a concrete pourer and mechanical laborer."  (Tr. 205, citing Tr. 586).  The ALJ discussed plaintiff's hospitalization following surgical intervention in November 2019 and noted plaintiff was in stable condition and ambulating independently with instructions to avoid

bending, lifting or twisting, and avoid lifting anything greater than ten pounds. (Tr. 205-06, citing Tr. 558, 565-67). The ALJ cited plaintiff's February and March 2020 treatment notes and February 2020 lumbar spine x-ray (Tr. 206, citing Tr. 575-76, 578-79, 588), and highlighted that plaintiff was "advised that it can take up to 18 months to completely recover radicular symptoms and even then may have some residual mild foot numbness, with the claimant provided a referral for physical therapy evaluation." (*Id.*, citing Tr. 576).

In addition to reviewing Ms. Paima's treatment records from July 2020, August 2020, and March 2021 as discussed above, the ALJ considered plaintiff's physical therapy appointments beginning with his initial evaluation on September 3, 2020, and concluding with the re-evaluation on October 22, 2020. (Tr. 206-07, citing Tr. 648, 654, 658, 662, 666-68). Notably, the ALJ cited plaintiff's October 22, 2020 appointment reflecting plaintiff's "function had gotten much better, showed the claimant was full weight bearing with no assistive devices, and was able to perform household chores and walk for extended periods of time." (Tr. 206-07, citing Tr. 666-67).

As discussed above, the ALJ further considered neurology records from Dr. Wang from April and May 2021. (Tr. 207, citing Tr. 712-14, 718-22, 740, 744-45). The ALJ determined that Ms. Paima's assessed limitations were inconsistent with Dr. Wang's April 2021 neurology evaluation findings. (Tr. 208). Dr. Wang opined that both the brain and lumbar spine MRIs were normal, and the ALJ credited this assessment. In addition, plaintiff's physical examination with Dr. Wang was unremarkable (normal motor examination and reflexes), with the exception of decreased sensory exam to the left leg and report of cane use. (Tr. 207, 208, 712-14). The ALJ further contrasted Ms. Paima's restrictions with plaintiff's findings on neurological follow up in May 2021. (Tr. 208). As the ALJ noted, although plaintiff continued to complain of

13

radiating pain and numbness in his left leg with occasional weakness, physical examination showed full range of motion of the lower extremities, normal 5/5 motor strength in all tested muscle groups, and abnormal sensory left S1 dermatome. (Tr. 207, 740-45). Moreover, the ALJ cited an April 21, 2021 treatment note where plaintiff "underwent electromyography and nerve conduction study which was completely normal." (*Id*., citing Tr. 718-22).

After examining the medical evidence of record, the ALJ summarized the relevant findings:

> [T]he record reflects a history of spinal fusion surgery due to degenerative disc disease with appropriate postoperative healing as reflected by the medical record discussed above. The claimant did endorse some residual left lower extremity symptoms, with some additional increase in symptoms after a tripping on his cat. Physical therapy notes suggested reported symptoms that were inconsistent with the objective physical findings, with regular and consistent improvement reflected in therapy notes. Indeed, despite subjective reports of disabling pain, but for some abnormal sensation in the left lower extremity and decreased spinal range of motion, the claimant's physical examinations, imaging studies, and electromyographic testing were normal. The record shows the claimant was able to help his friend fix brakes, could play video games, was able to attend his child's sporting events, was able to continue to operate a motor vehicle, was able to engage in a variety of hobbies, could perform activities of daily living independently, and was even able to take his wife to a casino suggesting greater functionality than otherwise alleged. While the undersigned has incorporated an allowance for use of an assistive hand held device for ambulation in the form of a cane based on the claimant's subjective reports, it is notable that there does not appear to be any notations of medical necessity for the same after the claimant's post-operative healing period was completed. The record does not support the claimant's alleged sitting, standing, or walking limitations, nor does it support disabling functional limitation generally. . . .

(Tr. 207-08).

The record evidence substantially supports the ALJ's consistency finding. In evaluating the ALJ's finding, the Court considers the ALJ's discussion of Ms. Paima's opinion as well as the record as a whole. *See William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022), *report and recommendation adopted*, 2022 WL

16745337 (S.D. Ohio Nov. 7, 2022) (citing *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) (noting that the ALJ's entire decision must be considered); *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (affirming ALJ evaluation of opinion where "[e]lsewhere in her decision, the ALJ laid out in detail the treatment records" undercutting the opinion)). The ALJ considered the medical records and plaintiff's activities of daily living and reasonably determined that Ms. Paima's restrictions were inconsistent with the record evidence. Plaintiff's argument that the "ALJ's limited review of the record misrepresented the extent of [plaintiff's] treatment" (Doc. 8 at PAGEID 861) is belied by the ALJ's decision as a whole. (Tr. 205-08). Nor has plaintiff identified any treatment notes or portions of the record that the ALJ failed to discuss in assessing the consistency of Ms. Paima's opinion.

Finally, to the extent plaintiff references evidence in the record that could be considered consistent with Ms. Paima's opinion or casts doubt on the ALJ's disability finding, it is not the province of the Court to reweigh the evidence. "Even if the evidence could also support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion reached." *Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 898 (6th Cir. 2019) (alteration in original) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)). The evidence here substantially supports the ALJ's conclusion that Ms. Paima's assessed restrictions are inconsistent with the medical evidence of record. The ALJ's decision finding Ms. Paima's opinions unpersuasive is supported by substantial evidence, and plaintiff's sole assignment of error is overruled.[9]

---

[9] In the final sentence of his reply memorandum, plaintiff argues that "the RFC was an inaccurate representation of [plaintiff's] remaining capacity for work related activities." (Doc. 11 at PAGEID 882). Plaintiff, however, did not include any assignment of error pertaining to the ALJ's RFC in his statement of specific errors. (*See* Doc. 8). It is well established that it is "not permissible for a party to raise a new issue in a Reply." *Spurlock v. Comm'r of Soc. Sec.*, No. 2:20-cv-3981, 2022 WL 23683, at *11 (S.D. Ohio Jan. 3, 2022), *report and recommendation adopted*, 2022 WL 742723 (S.D. Ohio Mar. 11, 2022) (citing cases). Accordingly, plaintiff has waived any argument pertaining to the ALJ's RFC by failing to develop it either legally or factually in his Statement of Errors. *See Kuhn*

15

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:  8/30/2023

Karen L. Litkovitz
Chief United States Magistrate Judge

---

*v. Washtenaw Cnty*., 709 F.3d 612, 624 (6th Cir. 2013) (internal citations omitted) (emphasis added) (The Sixth Circuit "has consistently held that *arguments not raised in a party's opening brief*, as well as arguments adverted to in only a perfunctory manner, are waived").